UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPHINE ALEXANDER                          CIVIL ACTION

VERSUS                                       NO. 22-2177

THE TRAVELERS INDEMNITY                      SECTION M (1)
COMPANY, *et al.*

## ORDER & REASONS

Before the Court is a motion to remand filed by plaintiff Josephine Alexander.[1]  Defendants

Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance

Company of North America) and Pacific Employers Insurance Company (collectively, the

"Century Parties"), as the insurers of Reilly-Benton Company, Inc. ("Reilly-Benton"), respond in

opposition.[2]  Alexander replies in further support of her motion.[3]  Having considered the parties'

memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the

motion to remand.

## I.    BACKGROUND

This case arises from personal injuries allegedly caused by exposure to asbestos.  In June

2021, Alexander was diagnosed with asbestosis.[4]  Alexander alleges that she was secondarily

exposed to asbestos fibers that her husband brought home on his clothing when he worked as an

insulator for The Cajun Company at various industrial sites from 1970 through 1988.[5]  On May

27, 2022, Alexander filed this suit in the 29th Judicial District Court, Parish of St. Charles, State of

---

[1] R. Doc. 7.
[2] R. Doc. 13.
[3] R. Doc. 14.
[4] R. Doc. 1-1 at 7.
[5] *Id.*

Louisiana, against various premises owners and asbestos contractors, suppliers, manufacturers, and professional vendors, along with several insurance companies, asserting claims for negligence and strict liability.[6]  The Century Parties are named as the insurers of Reilly-Benton, which was a supplier of asbestos-containing construction materials to customers in the maritime and aerospace industries.[7]  On July 7, 2022, Alexander filed an amended petition adding claims for fraud and breach of good faith against the Century Parties and other insurers, alleging that agreements reached in Reilly-Benton's bankruptcy case among Reilly-Benton and its "liability insurers" altered the insurance contracts to the detriment of injured third-parties, like her.[8]  That same day, Alexander moved in state court to sever her claims against the Century Parties from the rest of her case, citing other cases in which the Century Parties moved for a stay or removed the action due to Reilly-Benton's bankruptcy, *In re Reilly-Benton Co.,* No. 17-12870 (Bankr. E.D. La. filed Oct. 25, 2017).[9]

On July 14, 2022, the Century Parties removed Alexander's claims against them to federal court pursuant to 28 U.S.C. § 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure as related to Reilly-Benton's pending bankruptcy case within the meaning of 28 U.S.C. § 1334(b).[10]  The Century Parties also assert that the proceeds of their polices are property of Reilly-Benton's bankruptcy estate over which the federal court has jurisdiction pursuant to 28 U.S.C. § 1334(e).[11]

---

[6] *Id.* at 5-12.
[7] *Id.* at 6; R. Doc. 1 at 3.
[8] R. Doc. 1-3 at 3-6.
[9] R. Doc. 1-4 at 1-3.
[10] R. Doc. 1 at 1-9.
[11] *Id.* at 5-6.

## II.     PENDING MOTION

Alexander filed the instant motion to remand arguing that remand is required because the claims against the Century Parties do not fall within the scope of "related-to" subject-matter jurisdiction of 28 U.S.C. § 1334.[12]   Alexander argues that even if the claims are related to the Reilly-Benton bankruptcy case, mandatory abstention under the statute applies because (1) the action could not have been commenced in a United States court absent bankruptcy jurisdiction and (2) the action can be timely adjudicated in a state forum of appropriate jurisdiction.[13]   In the alternative, Alexander argues that equitable remand and permissive abstention should apply to this case.[14]

In opposition, the Century Parties argue that this Court has subject-matter jurisdiction over the action under 28 U.S.C. § 1334.[15]   Specifically, the Century Parties contend that the Court has "related to" jurisdiction within the meaning of § 1334(b) because the limited proceeds of the liability policies issued to Reilly-Benton may be overcome by competing claims; therefore, the proceeds should be considered property of the bankruptcy estate.[16]   The Century Parties argue that mandatory abstention under § 1334(c) is not applicable because the automatic bankruptcy stay resulting from Reilly-Benton's chapter 7 bankruptcy case would preclude timely adjudication of the state-court action.[17]   Additionally, the Century Parties argue that, pursuant to § 1334(e)(1), the Court also has jurisdiction over the case because the proceeds of the policies they issued to Reilly-Benton are property of the estate.[18]

---

[12] R. Doc. 7-1 at 5.
[13] *Id.* at 5, 7-10.
[14] *Id.* at 10.
[15] R. Doc. 13 at 1-2.
[16] *Id.* at 9-16.
[17] *Id.* at 18-22.
[18] *Id.* at 11.

III.     LAW & ANALYSIS

A.  "Related to" Jurisdiction and the Remand Standard

In bankruptcy cases, 28 U.S.C. § 1452(a) provides that a party may remove a claim in a civil action to a federal district court if that court has jurisdiction of such claim under 28 U.S.C. § 1334.  Section 1334 states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11."  28 U.S.C. § 1334(b) (emphasis added).  Although broad, the scope of "related to" jurisdiction is not "limitless."  *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995).

Prior to the confirmation of the bankruptcy plan, a proceeding is "related to" the bankruptcy case if the "'outcome could conceivably have any effect on the estate being administered in bankruptcy.'"  *In re Galaz*, 841 F.3d 316, 322 (5th Cir. 2016) (quoting *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 304 (5th Cir. 2013)); *see also In re GenOn Mid-Atlantic Dev., L.L.C.*, 42 F.4th 523, 534 (5th Cir. 2022) ("A proceeding relates to a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect' on the debtor's estate.") (quoting *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999)).  "'"Related to" jurisdiction includes any litigation where the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.'"  *In re KSRP, Ltd.*, 809 F.3d 263, 266 (5th Cir. 2015) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386 (5th Cir. 2010)).  A purpose of "related to" jurisdiction "'is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate.'"  *In re Zale Corp.*, 62 F.3d 746, 752 (5th Cir. 1995) (quoting *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994)) (emphasis omitted).

Because federal courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are construed against removal and in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing that federal subject-matter jurisdiction exists and that removal was proper. *Id.*

**B. Removal is Proper Because the Limited Proceeds of the Liability Policies May Be Overcome by Competing Claims and So They Are "Related to" the Bankruptcy Case**

The determination whether the proceeds of an insurance policy belong to a debtor's bankruptcy estate must be made on a "fact-specific," case-by-case basis. *In re OGA Charters, L.L.C.*, 901 F.3d 599, 603 (5th Cir. 2018) (citing *In re Edgeworth*, 993 F.2d 51, 56 (5th Cir. 1993); *In re Sfuzzi, Inc.*, 191 B.R. 664, 668 (Bankr. N.D. Tex. 1996)). The Fifth Circuit has held that when "a siege of tort claimants threaten[s] the debtor's estate over and above the policy limits" of liability insurance policies, the proceeds are classified as property of the estate. *OGA Charters*, 901 F.3d at 604. Such circumstances "give[] rise to an equitable interest of the debtor in having the proceeds applied to satisfy as much of those claims as possible." *Id.* (citing *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1022-23 (5th Cir. 2012); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 91-92 (2d Cir. 1988); *In re Taylor Agency, Inc.*, 281 B.R. 354, 362-63 (Bankr. S.D. Ala. 2001)). To permit the opposite result "would 'prevent the bankruptcy court from marshalling the insurance proceeds, and, along with the other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate.'" *Id.* at 604-05 (quoting *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 560 (1st Cir. 1986)) (alteration omitted).

In *OGA Charters*, the Fifth Circuit concluded that the proceeds of a capped liability insurance policy constituted property of the debtor's estate when the competing claims of 49 tort

claimants threatened to exhaust the limits of the liability insurance policy and impinge upon the debtor's estate. 901 F.3d at 904-05; *see also Roe v. Cath. Charities Archdiocese*, 2020 WL 6042327, at *4 (E.D. La. Oct. 13, 2020) (holding insurance proceeds to be property of the debtor's estate when the claims of 15 tort claimants, "with the potential for even more such claims," threatened to exceed the aggregate limits of the four liability insurance policies at issue).

In the instant case, the Century Parties indicate that more than 18,600 asbestos claims were pending against Reilly-Benton at the time it filed bankruptcy.[19]  The Century Parties also represent that Reilly-Benton has been subject to more than 20,000 personal injury and wrongful death claims stemming from alleged exposure to asbestos or asbestos-containing products that the company sold.[20]  Alexander does not dispute these numbers.  Like Alexander's claims here, these tort claims are based on alleged exposure to asbestos or asbestos-containing products sold by Reilly-Benton.[21] According to Reilly-Benton's bankruptcy trustee, of the nine applicable insurance policies issued by the Century Parties to Reilly-Benton, three have been exhausted, four have coverage disputed in full, and the other two, combined, have approximately $2.1 million of their limits remaining (though coverage is disputed on both).[22]  It is certainly "conceivable," then, if not obvious, that these thousands of competing tort claims threaten Reilly-Benton's bankruptcy estate over and above the policy limits.  Accordingly, this Court finds that the proceeds of these liability insurance policies constitute property of the debtor's estate, and that the thousands of tort claims on these policies, including Alexander's, could conceivably affect the bankrupt estate.  Therefore, pursuant

---

[19] R. Doc. 13 at 9.
[20] *Id.*
[21] R. Doc. 1-1 at 3-4.
[22] R. Doc. 7-3 at 3; *In re Reilly-Benton, Inc.*, No. 17-12870 (Bankr. E.D. La.), R. Doc. 56 at 3.

to 28 U.S.C. § 1334(b), this Court has "related to" bankruptcy jurisdiction over this case, which consists of Alexander's claims against the Century Parties.[23]

### C. Mandatory Abstention is Not Applicable in This Case

Alexander argues that, should the Court find "related to" jurisdiction under 28 U.S.C. § 1334(b) to exist, mandatory abstention would nevertheless require remand.[24]   Section 1334(c)(2), which governs mandatory abstention, states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).  The Fifth Circuit has held that mandatory abstention is required under § 1334(c)(2) when four conditions are met: (1) an action with respect to the state-law claims could not have been commenced in federal court absent bankruptcy jurisdiction, (2) the claims only relate to a bankruptcy case, (3) an action regarding the claims has been commenced in state court, and (4) such an action can be timely adjudicated in state court.  *In re GenOn Mid-Atlantic Dev.*, 42 F.4th at 539 (citing *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007)).  Additionally, the motion for abstention must be timely.  28 U.S.C. § 1334(c)(2).  The determination whether mandatory abstention is appropriate in the instant case turns on the applicability of the automatic bankruptcy stay, set forth in 11 U.S.C. § 362, that went into effect when Reilly-Benton filed

---

[23] Based on Reilly-Benton's briefing in another case, Alexander repeatedly asserts that the Century Parties' insurance policies are "inexhaustible." R. Doc. 14-2 at 2.  The Century Parties explain, however, that this adjective was applied to "contracting" claims, not liability or "product" claims as are at issue here. R. Doc. 13 at 11-13.  The Century Parties go on to explain that the liability policies in this case are certainly limited, if not exhausted, and are now subject to a pending settlement in bankruptcy court. *Id.* at 10, 11-13, 15.  Thus, Alexander's characterization of the Century Parties' policies as "inexhaustible" is not apt and does not alter this Court's conclusion that the policy proceeds are limited and constitute property of the estate.

[24] R. Docs. 7-1 at 5; 14-2 at 1-2.

bankruptcy in 2017.[25]  *See Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2012) ("This stay goes into effect without any action required by the bankruptcy court.") (citing 3 COLLIER ON BANKRUPTCY ¶ 362.02 (16th ed. 2011)).  Since the automatic stay applies to Alexander's claims against the Century Parties, the action as to these claims cannot be timely adjudicated in state court, leaving the fourth condition for mandatory abstention unsatisfied.

District courts have jurisdiction to determine the applicability of the automatic stay under 11 U.S.C. § 362.  *See La. Marine Operators, LLC v. JRC Marine, LLC*, 2021 WL 4050924, at *2 (E.D. La. Aug. 3, 2021) ("'[D]istrict courts retain jurisdiction to determine the applicability of the stay to litigation pending before them, and to enter orders not inconsistent with the terms of the stay.'") (quoting *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990)); *see also Arnold v. Garlock Inc.*, 288 F.3d 234, 236 (5th Cir. 2002) ("Most circuits hold that the district court has jurisdiction to determine the applicability of the automatic stay under § 362(a) to proceedings before it.").  The automatic stay, in pertinent part, suspends "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  The Fifth Circuit has observed that although "[t]he automatic stay does not generally apply to third parties such as debtors' codefendants or guarantors," the stay will apply to direct actions against insurers when "a court finds insurance proceeds to be property of the bankruptcy estate." *Sosebee*, 701 F.3d at 1025 (citing 11 U.S.C. § 362(a)(3)).  Because the insurance proceeds from the policies issued by the Century Parties to

---

[25] Although not argued by either party, this Court notes that the first condition of the mandatory abstention test is not met here because once the Century Parties removed Alexander's claims against them via the bankruptcy removal statute, 28 U.S.C. § 1452, complete diversity existed between Alexander, a Louisiana citizen, and the Century Parties, Pennsylvania citizens.  R. Doc. 1-1 at 5-6.  Thus, where Alexander's diverse state-law claims against the Century Parties were properly before the federal court ("[t]he claims against the nondiverse parties [having] stayed in state court, thanks to the bankruptcy removal statute") and where "'an action' regarding those claims – the claims before the federal court – 'could ... have been commenced' in federal court absent related-to jurisdiction" on the basis of diversity jurisdiction, mandatory abstention is not required. *See In re GenOn Mid-Atlantic Dev.*, 42 F.4th at 540.

debtor Reilly-Benton constitute property of the bankruptcy estate, Alexander's direct action claims against the Century Parties are subject to the automatic stay and cannot be timely adjudicated in the state-court action were they to be remanded there.[26]

Finally, a contrary reading of § 1334(c) would require that the Court ignore the plain language of § 1334(d), which states in pertinent part:

> Any decision to abstain or not to abstain made under subsection (c) ... is not reviewable by appeal or otherwise .... Subsection (c) and this subsection *shall not be construed to limit the applicability of the stay* provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

28 U.S.C. § 1334(d) (emphasis added).  The abstention provisions cannot be read to render the automatic stay nugatory.  Accordingly, this Court finds that mandatory abstention is not warranted in this case.

### D.  Equitable Remand and Permissive Abstention Are Not Appropriate in This Case

Alexander argues that, in the event the Court concludes "related to" bankruptcy jurisdiction exists and mandatory abstention is unwarranted, the Court should exercise its discretion to permissively abstain from or equitably remand the case because of both prejudice to her and comity with state law.[27]  One court has recently summarized the law in this area as follows:

> As other courts have noted, the factors governing permissive abstention and equitable remand are nearly identical.  Because the analysis is so similar, courts that grant remand often employ equitable remand in 28 U.S.C. § 1452(b), which allows a court to remand "on any equitable ground" claims removed under § 1452(a).  This is a broad grant of authority.  A court may consider the following factors when deciding a motion for equitable remand:
>
> (1)   the convenience of the forum;
> (2)   the presence of non-debtor parties;

---

[26] Alexander's bare assertion that "the state court has not stayed any claims against Century Parties, nor has it given any indication that it would," R. Doc. 14-2 at 2, is without significance as this Court has jurisdiction to determine the applicability of the stay to the claims before it.  Moreover, the stay under 11 U.S.C. § 362(a) is automatic, meaning that the state court need not give any indication that the stay is in place in order for it to be effective.

[27] R. Docs. 7-1 at 1, 10-11; 14-2 at 3-4.

(3)    whether the case should be tried as a whole in state court;

(4)    the duplicative and uneconomic effect of judicial resources in two forums;

(5)    the lessened possibility of inconsistent results;

(6)    whether the state court would be better able to handle issues of State law;

(7)    the expertise of the Bankruptcy Court;

(8)    the degree of relatedness or remoteness to the main bankruptcy case;

(9)    prejudice to involuntarily removed parties;

(10)   whether the case involves forum shopping;

(11)   the burden on the Bankruptcy Court's docket; and

(12)   considerations of comity.

*Doe v. Archdiocese of New Orleans Indem., Inc.*, 2020 WL 4593443, at *3-4 (E.D. La. Aug. 11, 2020) (quoting *Lea v. Johnson & Johnson*, 2019 WL 3335143, at *2 (E.D. La. July 24, 2019)) (internal citations omitted). In congruence with recent cases analyzing permissive abstention or equitable remand, this Court concludes "that remand is inappropriate at this time, largely because the automatic stay has not been lifted." *Doe*, 2020 WL 4593443, at *4; *see also Roe*, 2020 WL 6042327, at *5. Additionally, Alexander is just one of thousands of claimants allegedly exposed to asbestos or asbestos-containing products handled by the debtor, Reilly-Benton. Remand in this instance to allow Alexander to pursue her claims in state court on an expedited basis would not be equitable because Alexander's recovery from the limited proceeds of the liability policies would disadvantage other potential claimants in their recovery of a share of the available insurance proceeds – an outcome that should be especially avoided now given the motion pending before the bankruptcy court seeking approval of a settlement between the Century Parties and Reilly-Benton concerning the insurance proceeds.[28] Remand in this instance would thus undermine the bankruptcy court's core function of marshalling the assets of the bankruptcy estate, including these insurance proceeds, and arranging for their fair distribution to creditors like the thousands of other

---

[28] R. Doc. 13 at 5; *In re Reilly-Benton, Inc.*, No. 17-12870 (Bankr. E.D. La.), R. Doc. 56.

tort claimants who have filed claims against Reilly-Benton.  Therefore, the Court concludes that neither permissive abstention nor equitable remand is appropriate in this case.

**IV.    CONCLUSION**

Accordingly, for the reasons stated above,

IT IS ORDERED that Alexander's motion to remand (R. Doc. 7) is DENIED.

New Orleans, Louisiana, this 2nd day of September, 2022.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE